In re The **BELL FAMILY TRUST**, Debtor.

**Bell Family Trust, Through W. Simmons Sandoz, Trustee, Plaintiff**

v.

**Mary Sue Bell, Sue Bell Holdings, L.L.C., and Amerada Hess Corporation, Defendants.**

Bankruptcy No. 02–50477.
Adversary No. 02–5045.

United States Bankruptcy Court, W.D. Louisiana, Lafayette–Opelousas Division.

June 21, 2005.

---

38. Tr. II at 152–53.

D. Patrick Keating, Opelousas, LA, for Debtor.

## REASONS FOR DECISION

GERALD H. SCHIFF, Bankruptcy Judge.

The Bell Family Trust ("Trust" or "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code[1] on March 8, 2002 ("Petition Date"), and on that day an order for relief was duly entered. W. Simmons Sandoz ("Trustee") is the duly appointed, qualified and acting trustee of the Debtor's estate.

In furtherance of his statutory duties, the Trustee brought the instant proceeding against the named Defendants[2]. Basically, the Trustee seeks to (1) avoid certain transactions between the Debtor and Mary Sue Bell ("Ms.Bell") asserting several causes of action, including sections 544, 547 and 548, and (2) avoid other transactions

1. Title 11, United States Code. References to sections of the Bankruptcy Code herein are shown as "section."

2. While Amerada Hess Corporation has been named as a Defendant, its presence is only as a stakeholder.

and recover property from Ms. Bell and/or Sue Bell Holdings, L.L.C. ("LLC").

The trial of the complaint was held in February 2004. After receiving testimony, the court directed the filing of post-trial briefs. All briefs have now been filed.

## BACKGROUND

The Trust was created by Wilfred Bell on October 8, 1996. The beneficiaries of the Trust are Mr. Bell's seven children and/or their descendants. Ms. Bell, one of his children, was named as the trustee of the Trust.

Mr. Bell transferred two parcels of property to the Trust. The first occurred on October 8, 1996, when he donated 288 acres of farmland to the Trust. The second donation consisted of Mr. Bell's house and surrounding one acre. While the second donation was dated October 8, 1996, the transaction was not recorded in the public records until April 10, 2000. Although the house and one acre were free and clear of any liens or encumbrances at the time the donation was date, in March 1997, Ms. Bell was granted a $40,000 mortgage on the house and one acre.

At the time the Trust was created, Mr. Bell, along with several other individuals, had been arrested and charged with multiple counts of sexual exploitation. The criminal proceeding included an effort by the government to provoke a forfeiture of Mr. Bell's home and surrounding one acre.

The Trust document had a provision whereby through majority vote of the beneficiaries, Ms. Bell could be removed as trustee and a new trustee appointed. On January 2, 1998, the day before Mr. Bell was to report to a Federal Medical Facility in Fort Worth, Texas, the Trust document was amended. The amendment deleted the provision that allowed the beneficiaries to remove Ms. Bell as Trustee and essentially appointed her as trustee for life,

even allowing her to name her own successor.

On the same day that the Trust document was amended, Mr. Bell executed a Power of Attorney in favor of Ms. Bell. That document was witnessed by Mr. and Mrs. N.J. Domingue and notarized by Frank Dawkins. Both Mr. and Mrs. Domingue testified, however, that Mr. Dawkins was not present in the hotel room when the document was signed and that they had never seen Mr. Dawkins prior to seeing him in court at the trial of this matter.

On June 19, 2001, Wilfred Bell was interdicted through proceedings initiated by Ms. Bell.

The Trust document contains a provision allowing the trustee to take "reasonable compensation." The document is silent regarding rates or terms of compensation; further, there was never any agreement regarding such compensation between Ms. Bell and either Wilfred Bell or the other beneficiaries. No compensation was taken by Ms. Bell until June 14, 1999, when she paid herself a lump sum of $12,000 and then $3,000; thereafter, she began drawing $1,000 per month. This payment commenced after Ms. Bell inquired of Joan Martin, a CPA as to what a reasonable compensation would be. Ms. Martin testified that she agreed that $1,000 per month would be reasonable assuming that Ms. Bell was working full time on Trust business. Ms. Bell did not advise the other beneficiaries that she was drawing compensation from the Trust.

Up until 2001, Ms. Bell had made distributions to the beneficiaries, including herself. Some time in the summer of 2001, however, those distributions stopped causing inquiries from the other beneficiaries. The beneficiaries were unable to obtain information from Ms. Bell so a group of them hired attorney Glenn Marcantel to

investigate. Mr. Marcantel made an informal written request for information and an accounting on July 31, 2001. This request was answered by Stan Gauthier who indicated that he was the attorney for Ms. Bell as trustee of the Trust. After repeated correspondence between Mr. Marcantel and Mr. Gauthier, Mr. Gauthier produced copies of the Trust document, the amendment, two donations and year-end financial statements for 1998, 1999 and 2000. An accounting was not provided until March 28, 2002, with a corrected accounting subsequently provided on May 8, 2002.

During the time that the beneficiaries were attempting to obtain an accounting, Ms. Bell received an offer in the amount of $120,000 for the purchase of mineral rights of the Trust. Also around this time, Ms. Bell started preparing an invoice to retroactively bill the Trust for her services for the period June 6, 1998, through August 2001, claiming a total indebtedness due her from the Trust in the amount of $330,151.60.

On August 21, 2001, Ms. Bell formed the LLC, and on August 30, 2001, Mr. Gauthier prepared a Dation En Paiment and Termination of Trust ("Dation"). The Dation was signed by Ms. Bell as trustee of the Trust and as agent for the LLC. In addition, an Act of Exchange was executed whereby Ms. Bell transferred her alleged claim for compensation to the LLC.

The Dation terminated the Trust as to Ms. Bell, and, purportedly to distribute her interest in the Trust, transferred the following Trust assets to the LLC: (1) 185 of the 288 acres, (2) 100% of the mineral rights for all of the acreage, and (3) miscellaneous assets including a $16,000 note due from Nedia Bell, the Bell family home and one acre and some co-op stock.

The only water well that serviced the rice farming operation on the Trust property was situated on the 185 acres transferred to the LLC. According to Kenneth Gaspard, a farmer, the acreage that remained could not be farmed without a water well and further that drilling a new well for the limited acreage would be an unreasonable expense.

Although Mr. Marcantel was making inquiries regarding the Trust at the very time that these transactions were taking place, neither Ms. Bell nor Mr. Gauthier advised Mr. Marcantel or the other beneficiaries about them. Mr. Marcantel initially learned of these dealings in December 2001 when he first had to opportunity to personally review all of the Trust documents.

Following that discovery, the other beneficiaries filed a state court law suit and sought a temporary restraining order against Ms. Bell from further dissipating Trust assets. A TRO was issued but was ultimately not converted to a preliminary injunction. The state court, however, did order that a co-trustee be appointed and that an accounting be provided by Ms. Bell. On March 4, 2002, Ms. Bell filed a voluntary petition in bankruptcy on behalf of the Trust. The accounting was eventually provided after the bankruptcy filing.

This action was filed by Mr. Sandoz, the bankruptcy Trustee, alleging five separate grounds of recovery against Ms. Bell and Ms. Bell Holdings, LLC, namely:

Count I—contends that Ms. Bell breached her fiduciary duty to the Debtor as its trustee.

Count II—alleges that the transfers to Ms. Bell are avoidable as preferences pursuant to section 547.

Count III—alleges that the transfers to Ms. Bell are avoidable as fraudulent transfers pursuant to section 548.

Count IV—seeks to avoid the transfers pursuant to the laws of the State of Louisiana, in particular, the revocatory action.

Count V—alleges that the transfer from the Trust to Ms. Bell was void *ab initio* since (1) the Dation en Paiement was *ultra vires* and (2) Ms. Bell failed to obtain court approval before she undertook to transfer the Assets.

Ms. Bell and Holdings filed her first motion for summary judgment alleging that certain of the causes of action should be dismissed. On August 8, 2003, the court entered Reasons for Decision granting the motion in part holding that (1) the Trustee cannot seek to avoid any transfers based upon any finding of a breach of fiduciary duty, concluding that the remedy is damages; and (2) the Trustee cannot seek to avoid as preferential transfers, any retainers paid by the Trust to Ms. Bell more than one year prior to the bankruptcy filing. In all other respects, the first motion for summary judgment was denied.

Counsel for Ms. Bell was directed to submit an order on the Reasons for Decision. There was some dispute regarding the language of the order and on April 23, 2004, the Trustee filed a Motion for Clarification and/or Reconsideration of Reasons for Decision of August 8, 2003 ("Motion for Reconsideration"), indicating that the order circulated by counsel for Ms. Bell did not comport with what counsel for the Trustee believed to be the court's ruling. On May 18, 2004, the court took the Motion for Reconsideration under advisement.

On August 15, 2003, Ms. Bell and Ms. Bell Holdings, LLC filed a second motion for summary judgment. On December 16, 2003, the court entered an order granting the second motion in part and dismissing all causes of action which related to insolvency.

On January 15, 2004, Ms. Bell filed a Motion to Remove Trustee and Disqualify Trustee's Attorney. That motion was denied on January 21, 2004, at which time the court reserved the right of the Trustee to seek sanctions and costs for the filing of

the motion. The court deferred that issue until after the trial. The trial in this matter was held over four days in February 2004. Following the trial, the parties were directed to submit briefs. All briefs have now been filed.

## LAW AND ANALYSIS

### I. BREACH OF FIDUCIARY DUTY.

■ The duties and powers of a trustee of a Louisiana trust are set forth in LSA–R.S. 9:2061 *et seq.* Primarily, and of particular relevance here, the duties of a trustee are as follows:

9:2082—(A) A trustee shall administer the trust solely in the interest of the beneficiary;

(B) When there is more than one beneficiary, a trustee shall administer the trust impartially, based on what is fair and reasonable to all of the beneficiaries, except to the extent that the trust instrument manifests an intention that the trustee shall or may favor one or more of the beneficiaries.

9:2083—A trustee in dealing with a beneficiary on the trustee's own account shall deal fairly with him and communicate to him all material facts in connection with the transaction that the trustee knows or should know.

9:2089—A trustee shall give to a beneficiary upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and permit him, or a person duly authorized to him, to inspect the subject matter of the trust, and the accounts, vouchers, and other documents relating to the trust.

9:2090—(A) A trustee shall administer the trust as a prudent person would administer it. In satisfying this standard, the trustee shall exercise rea-

sonable care and skill, considering the purposes, terms, distribution requirements, and other circumstances of the trust.

(B) A trustee who has special skills or expertise, or has held himself out as having special skills or expertise, has a duty to use those special skills or expertise.

These provisions, and the jurisprudence arising thereunder, clearly establish an exceedingly high fiduciary duty for trustees. In *Succession of Dunham*, 408 So.2d 888, 900 (La.1981), the Louisiana Supreme Court declared

the statutory provisions relative to the responsibilities of a Trustee are rigid and hold the Trustee to an even higher fiduciary responsibility to his beneficiary than that owed by a succession representative to heirs. The very word "Trustee" implies the strongest obligation on the part of the Trustee to be chaste in all dealings with the beneficiary.

The court finds that Ms. Bell breached her fiduciary duties in numerous manners. There is no doubt but that Ms. Bell was acting on her own behalf at practically all times rather than on behalf of the beneficiaries. Ms. Bell did not deal fairly with the other beneficiaries nor did she communicate with them adequately. The following specific actions clearly support the court's finding.

First, the court finds that Ms. Bell was not acting on account of the beneficiaries when she had Wilfred Bell, then over 70 years of age, sign the amendment to the Trust in January 1998, thus removing the safeguards and essentially making Ms. Bell trustee for life. Mr. Bell testified that he believed the original provision in the trust which allowed the beneficiaries through majority vote to remove the trustee was an important provision; he was not aware that this provision had been removed. The evidence is clear that in January 1998 Wilfred Bell did not understand what he was signing. It is also abundantly clear that the sole purpose of the amendment was to enable Ms. Bell to exercise total control over the Trust property. Further, Ms. Bell never advised the other beneficiaries of the amendment. Her clandestine attitude in orchestrating the changes to the Trust evince her intent to act for her own benefit and not that of her co-beneficiaries.

Second, Ms. Bell breached her fiduciary duty to charge reasonable compensation. Although the trust document allowed the trustee to collect "reasonable compensation," the fees and hours which Ms. Bell attempted to charge were wholly unreasonable. Margaret Ritchey, trust expert, testified that when a trustee goes beyond normal services included within a base fee, a commercial trustee charges $25 per hour. Ms. Bell, with no experience in the field, was charging the Trust $55 an hour for her time. Both Ms. Ritchey and Paul Hood, the defendant's trust expert, testified that most individual trustees do not typically charge a fee. Ms. Bell testified that she has never been paid $55 per hour for any service she performed for third parties.

Ms. Bell testified that she generated her 58 page invoice to justify a $5,000 per month fee. The time entries on the invoice totally lack credibility as there are numerous days when more than 24 hours were billed. Further there were charges billed for a period prior to the creation of the Trust. In addition, there were charges billed to the Trust for the medical care of her parents and an arbitrary 48 hours per month for "extraordinary trips to farm." The court gives absolutely no credence whatsoever to the 58 page "invoice." The bulk of the time entries were manufactured and many of the services

rendered were for the benefit of Ms. Bell personally rather than for the benefit of the Trust. In fact, Ms. Bell charged the Trust $55 per hour for 17 hours to prepare the manufactured invoice.

The court also finds that a fee of $5,000 per month is completely unreasonable. The court notes that Ms. Bell was not compensating herself the monthly fee but apparently only decided to charge retroactively for her services in order to create some basis for removing Trust property. Interestingly, she never advised the other beneficiaries that she had decided to compensate herself, further evidence of her clandestine actions benefitting herself at the expense of the co-beneficiaries.

Third, and most significantly, the manner in which Ms. Bell chose to compensate herself was a breach of her duty to act as a prudent administrator. The execution of the Dation which essentially stripped the Trust of the vast majority of its valuable assets is a glaring example of self-dealing. It is unfathomable how Ms. Bell can argue that she was acting on account of the beneficiaries when she transferred the bulk of the Trust assets to herself. Furthermore, the timing of the Dation makes the transfer even more suspicious. Ms. Bell executed the Dation at a time when the other beneficiaries were seeking an accounting and disclosure of information. Rather than disclose information, Ms. Bell chose to transfer assets of the Trust to herself. If she truly believed she was entitled to compensation and/or assets, why was she trying to hide it from the beneficiaries?

Fourth, Ms. Bell used Trust assets to pay personal expenses, including payment of her American Express bills, automobile leases, gasoline credit cards bills, cellular phone bills, phone bills and beeper charges. Ms. Bell also paid expenses on behalf of her mother and paid Stan Gauthier legal fees for the execution of a will for her mother, who was neither a settlor or beneficiary of the Trust. CPA Lou Rolfes calculated the expenses which were not related to the business of the Trust in the amount of $162,214.96.

Finally, in addition to her failure to disclose the above cited incidents, Ms. Bell also failed to disclose to the co-beneficiaries that Cobra Petroleum had made an offer to the Trust to purchase mineral rights in the amount of $120,000.00. This offer was likewise made at a time when the beneficiaries had employed counsel to seek disclosure of information.

■ The record of this proceeding is replete with further examples of Ms. Bell's self-dealing and failure to act on behalf of the beneficiaries of the Trust. The court finds that Ms. Bell breached her fiduciary duties. As a result, the court finds that Ms. Bell is entitled to no compensation for her services as trustee of the Trust. Further, as the transfer of Trust property was a breach of fiduciary duties, the Plaintiff is entitled to judgment against Ms. Bell for the amount of property transferred from the Trust, including the $266,000.00 transferred via the Dation and the $162,214.96 in expenses paid by Ms. Bell which were unrelated to Trust business.

The recovery shall include income received by Ms. Bell ($18,009.97) subsequent to the Dation and attributable to the transferred property. Further, early in these proceedings, Amerada Hess deposited the sum of $38,540.64 in the registry of the court. These funds, representing royalty proceeds from the transferred property, constitute property of the estate and are to be turned over to the Trustee.

### RECOVERY OF PROPERTY UNDER TRUST LAW

■ The Plaintiff requests that the court set aside the Dation and order the property returned to the Trust. The De-

fendants argue that this is not appropriate remedy pursuant to the Trust Code. The court disagrees. Pursuant to LSA–R.S. 9:2221, one of the remedies against a trustee for a breach of fiduciary trust is "to compel a trustee to redress a breach of trust."

The comments to LSA–R. S. 9:2221 state that, with one unrelated exception, the statute is similar in all respects to the Restatement of Trusts 2d. The Restatement provides that if a trustee in breach of trust sells trust property to himself individually and the price paid by him was less than the value of the property at the time the trustee purchased it, the beneficiary can compel him to pay the difference or "at his option the beneficiary can set aside the sale and compel the trustee to reconvey the property and account for any income which he has received there from." As the court has found that the Trust did not owe the sums to Ms. Bell, the price paid for the property transferred in the Dation was for less than the value of the property transferred. Without question, avoiding the transfer is the only appropriate method for satisfying the provision of La. R.S. 9:2221 requiring a trustee to redress a breach of trust.

## UNREASONABLY SMALL CAPITAL

■ The Plaintiff also requests that the transfer made pursuant to the Dation be set aside pursuant to section 548(a)(1)(B)(i) and (ii)(II) and/or (III). The relevant provisions of section 548 provide that:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\* \* \* \* \* \*

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

\* \* \* \* \* \*

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

Pursuant to these provisions, insolvency is not an issue. The court has already found that the Debtor did not receive a reasonably equivalent value for the Dation. Therefore, the only issues are whether the transfer left the Debtor with an unreasonably small capital for its ongoing business and/or whether the Debtor intended to incur or believed it would incur debts that would be beyond its ability to pay.

The first issue is to determine the business of the Debtor. The court previously held that the business of the Trust was mineral exploration and farming. By virtue of the Dation, the mineral interests were removed, thus eliminating that income from the Trust. In addition, since the property containing the water well was transferred to Ms. Bell, the Trust's ability to generate farm income was severely curtailed if not eliminated. The experts for both parties testified that it would not be feasible to drill a well on the remaining acreage. Although Ms. Bell proposed that the Trust could borrow money against the remaining property in order to fund ongoing farm expenses and pay its debts, Ms. Bell had been unable to obtain such a loan prior to the Dation.

With regard to paying its debts as they became due, Ms. Bell testified that the

assets of the Trust were diminishing even prior to the Dation and she did not believe that the Trust had sufficient income to meet its ongoing expenses.

The foregoing facts clearly establish that the requirements of both section 548(a)(1)(B)(i)(I) and (II) have been satisfied, thus enabling the plaintiff to avoid the transfer occasioned by the Dation.

## CONCLUSION

For the foregoing reasons, judgment is to be entered in favor of Plaintiff. Counsel for Plaintiff shall submit a proposed judgment in conformity with the foregoing reasons within 20 days of the date of these reasons.

**SO ORDERED.**