# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 21-573


BELL FAMILY TRUST

VERSUS

VERMILION PARISH CLERK OF COURT, ET AL.



**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 108946-I
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Chief Judge, Shannon J. Gremillion, and D. Kent Savoie, Judges.


**MOTION TO STRIKE DENIED;**
**AFFIRMED.**

**Gregory Russel Mier**
**Attorney at Law**
**2205 W Pinhook Rd, Ste 103A**
**Lafayette, LA 70508**
**(337) 534-0245**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Bell Family Trust**


**Mary Susan Bell**
**In Proper Person**
**101 Chateau Place**
**Lafayette, LA 70503**
**DEFENDANT/APPELLANT**

**SAVOIE, Judge.**

Appellant, Mary Susan Bell ("Ms. Bell"), appearing *pro se*, appeals a summary judgment rendered in favor of the Bell Family Trust ("the Trust") that cancelled a 1997 mortgage and a July 6, 2015 reinscription of that mortgage, as well as awarded the Trust with attorney fees and costs. For the following reasons we affirm.

We further note that, in its appellee brief, the Trust asks us to award it with additional attorney fees incurred on the appeal; however, because the Trust failed to timely answer Ms. Bell's appeal, we will not address the Trust's requested relief. *See, Charles v. LeBlanc*, 93-871 (La.App. 3 Cir. 3/2/94), 633 So.2d 866, *writ denied*, 94-1314 (La. 9/2/94), 643 So.2d 148.

## **Factual and Procedural Background**

Wilfred Bell ("Mr. Bell") (now deceased) created the Trust in October 1996. The beneficiaries of the Trust are his six children, including Ms. Bell, as well as his children's descendants. Ms. Bell was initially the trustee of the Trust, but no longer holds that capacity.

In October 1996, Mr. Bell donated several tracts of immovable property to the Trust, including his home and surrounding one-acre tract of land ("the Property"), which is at issue here.[1] This one-acre tract was transferred to the Trust

---

[1] The Property is described as follows in the Act of Donation:

A certain parcel of land measuring 1 square acre, including all buildings, improvements and personal movables located thereon; the center of said 1 square acre parcel being located at the center of the Donor's personal residence situated on that certain parcel of land containing 103.50 acres, more or less, situated in the Eastern portion of the Northeast Quarter of Section 19, Township 11 South, Range 2 East, Vermilion Parish, Louisiana, being bound now or formally as follows: North by Leonce Schexnider, Harold J. Broussard and C. Dulva Thibodeaux; East by Verga Adams Mouton, South by lands of Donor described as Tract 2; West by lands of Donor described as Tract 3, this being the Donor's personal residence, along with a twenty foot right of way for purposes of a

via an October 1996 Act of Donation, but the donation was not recorded until April 2000. The Act of Donation was signed by Mr. Bell as the donor, and Ms. Bell accepted and signed the donation as the duly appointed trustee of the Trust. The Act of Donation was also signed by two witnesses and a notary, and, therefore, it was in authentic form.

Shortly after Mr. Bell donated the Property to the Trust, he signed a promissory note agreeing to pay $40,000.00 he allegedly owed to Ms. Bell. The debt was secured by a mortgage ("the Mortgage") in favor of Ms. Bell that encumbered the Property. Mr. Bell signed the promissory note and Mortgage on March 12, 1997, and the Mortgage was recorded in the Vermilion Parish records on March 13, 1997, under entry number 790331.

On August 30, 2001, a Dation En Paiment ("the Dation") was entered into between the Trust and Sue Bell Holdings, LLC ("the LLC"). Ms. Bell signed the document both as trustee on behalf of the Trust and as the "general manager" of the LLC. The Dation transferred various Trust assets to the LLC, including the Property, and released the Trust from debt allegedly owed to the LLC, including the $40,000.00 promissory note.[2]

In March 2002, Ms. Bell, on behalf of the Trust, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See In re Bell Family Trust,* 02-50477, 02-5045 (Bankr. W.D.La. 2005), 350 B.R. 700. The bankruptcy proceeding evolved into an adversarial proceeding, with the bankruptcy trustee alleging various counts of recovery against Ms. Bell, including claims for multiple

---

driveway beginning at the front of Donor's personal residence and extending to W. Bell Road.

[2] It is unclear from the record how the promissory note became an obligation of the Trust.

breaches of fiduciary duty. The bankruptcy trustee further sought to reverse the property transfers occasioned by the Dation, alleging that they violated and/or were invalid under federal and Louisiana law.

The bankruptcy court, in *In Re Bell Family Trust,* 350 B.R. at pp. 702-704, provided the following additional background information:

> On June 19, 2001, Wilfred Bell was interdicted through proceedings initiated by Ms. Bell.
>
> . . . .
>
> Up until 2001, Ms. Bell had made distributions to the beneficiaries, including herself. Some time in the summer of 2001, however, those distributions stopped[,] causing inquiries from the other beneficiaries. The beneficiaries were unable to obtain information from Ms. Bell so a group of them hired attorney Glenn Marcantel to investigate. Mr. Marcantel made an informal written request for information and an accounting on July 31, 2001. This request was answered by Stan Gauthier who indicated that he was the attorney for Ms. Bell as trustee of the Trust. . . . An accounting was not provided until March 28, 2002, with a corrected accounting subsequently provided on May 8, 2002.
>
> During the time that the beneficiaries were attempting to obtain an accounting, Ms. Bell . . . . started preparing an invoice to retroactively bill the Trust for her services. . . claiming a total indebtedness due her from the Trust in the amount of $330,151.60.
>
> On August 21, 2001, Ms. Bell formed the LLC, and on August 30, 2001, Mr. Gauthier prepared a Dation En Paiment and Termination of Trust ("Dation"). The Dation was signed by Ms. Bell as trustee of the Trust and as agent for the LLC. In addition, an Act of Exchange was executed whereby Ms. Bell transferred her alleged claim for compensation to the LLC.
>
> The Dation terminated the Trust as to Ms. Bell, and, purportedly to distribute her interest in the Trust, transferred the following Trust assets to the LLC: (1) 185 of the 228 acres, (2) 100% of the mineral rights for all the acreage, and (3) miscellaneous assets including a $16,000 note from Nedia Bell, the Bell family home and one acre and some co-op stock.
>
> . . . . On March 4, 2002, Ms. Bell filed a voluntary petition in bankruptcy on behalf of the Trust. The accounting was eventually provided after the bankruptcy filing.

This action was filed by Mr. Sandoz, the bankruptcy Trustee, alleging five separate grounds of recovery against Ms. Bell and Ms. Bell Holdings, LLC. . . .

. . . .

. . . . On August 8, 2003, the court entered Reasons for Decision granting [Ms. Bell's] motion [for summary judgment] in part holding that (1) the Trustee cannot seek to avoid any transfers based upon any finding of a breach of fiduciary duty, concluding that the remedy is damages; and (2) the Trustee cannot seek to avoid as preferential transfers, any retainers paid by the Trust to Ms. Bell more than one year prior to the bankruptcy filing. In all other respects, the first motion for summary judgment was denied.

Counsel for Ms. Bell was directed to submit an order on the Reasons for Decision. There was some dispute regarding the language of the order and . . . . [o]n May 18, 2004, the court took the Motion for Reconsideration under advisement.

. . . . On December 16, 2003, the court entered an order granting [Ms. Bell's] second motion [for summary judgment] in part and dismissing all causes of action which related to insolvency.

On January 15, 2004, Ms. Bell filed a Motion to Remove Trustee and Disqualify Trustee's Attorney. That motion was denied on January 21, 2004, at which time the court reserved the right of the Trustee to seek sanctions and costs for the filing of the motion. The court deferred that issue until after the trial. The trial in this matter was held over four days in February 2004.

After trial, the bankruptcy judge rendered Reasons for Decision on June 21, 2005, finding that "Ms. Bell breached her fiduciary duties in numerous manners." *Id.* at 705. As a result of that finding, it awarded the Trust with various sums that had been transferred via the Dation, expenses unrelated to the Trust that had been paid by Ms. Bell, income that Ms. Bell had received following the Dation, and money that had been deposited into the court's registry. *Id.*

In addition, the bankruptcy judge found that setting aside the Dation and returning the transferred property to the Trust was proper under La.R.S. 9:2221, stating "[w]ithout question, avoiding the transfer is the only appropriate method for

4

satisfying the provision of La. R.S. 9:2221 requiring a trustee to redress a breach of trust." *Id.* at 707. The bankruptcy judge further found that the Trust was entitled to avoid the transfers occasioned by the Dation because the requirements of both 11 U.S.C.A. §548(a)(1)(B)(i)(I), and (II) were satisfied.[3] *Id.* The ruling further directed counsel to submit a proposed judgment in conformity with the ruling.

On August 1, 2005, the bankruptcy court rendered a judgment in favor of the Trust and against Ms. Bell, that, *inter alia,* awarded the Trust with various sums, together with interest, in accordance with its Reasons for Ruling. The judgment also awarded the Trust with property that was previously transferred from the Trust by the Dation, including the Property at issue herein, as well as the $40,000.00 debt allegedly owed by Mr. Bell, as evidenced by the 1997 promissory note.

The United States Court of Appeals, Fifth Circuit, affirmed the bankruptcy judgment, with one modification to correct a calculation in the amount of money

_____

[3] With respect to this finding, the bankruptcy court, *Id.* at 707-08, stated as follows:

Pursuant to these provisions [11 U.S.C.A. 548(a)(1)(B)(i)(I), and (II)], insolvency is not an issue. The court has already found that the Debtor did not receive a reasonably equivalent value for the Dation. Therefore, the only issues are whether the transfer left the Debtor with an unreasonably small capital for its ongoing business and/or whether the Debtor intended to incur or believed it would incur debts that would be beyond its ability to pay.

The first issue is to determine the business of the Debtor. The court previously held that the business of the Trust was mineral exploration and farming. By virtue of the Dation, the mineral interests were removed, thus eliminating that income from the Trust. In addition, since the property containing the water well was transferred to Ms. Bell, the Trust's ability to generate farm income was severely curtailed if not eliminated. The experts for both parties testified that it would not be feasible to drill a well on the remaining acreage. Although Ms. Bell proposed that the Trust could borrow money against the remaining property in order to fund ongoing farm expenses and pay its debts, Ms. Bell had been unable to obtain such a loan prior to the Dation.

With regard to paying its debts as they became due, Ms. Bell testified that the assets of the Trust were diminishing even prior to the Dation and she did not believe that the Trust had sufficient income to meet its ongoing expenses.

5

owed, which is irrelevant to the instant case. *In re Bell Family Trust,* 251 Fed.Appx. 864 (5th Cir. 2007).

On November 9, 2005, the bankruptcy court, pursuant to a motion under Fed.R.Bankr.P. 7070, rendered a judgment that, *inter alia,* specifically divested title of the Property from Mary Susan Bell, a/k/a Sue Bell and Sue Bell Holdings, LLC, and vested title of the Property in the Bell Family Trust.

A final decree in the bankruptcy proceeding was entered on February 14, 2012. Ms. Bell thereafter sought to reopen the bankruptcy case so that she could file a motion under Fed.R.Civ.P. 60 to vacate all prior orders and dismiss the case for lack of jurisdiction. Ms. Bell argued that the Trust was a spendthrift trust, rather than a business trust eligible for relief under Chapter 7. The bankruptcy judge denied her motion, noting a final June 2002 judgment in the bankruptcy proceeding finding that the Trust was a business trust, rather than a spendthrift trust. Ms. Bell appealed to the federal district court, and further sought to recuse the bankruptcy judge because she had filed a complaint of judicial misconduct against him. *See Bell v. Bell Family Trust,* 6:13-CV-00639 (W.D.La. Sept. 16, 2013), 2013 WL 9805802.

In its September 16, 2013 Report and Recommendation, not only did the magistrate judge for the federal district court affirm the bankruptcy court's ruling and deny the additional relief sought by Ms. Bell, it went on to recommend that Ms. Bell "be ordered to file no more frivolous, burdensome, and vexatious pleadings with this Court." *Bell v. Bell Family Trust,* 6:13-CV-00639, p. 1 (W.D.La. Sept. 16, 2013), 2013 WL 9805802. The magistrate judge further stated as follows:

> The undersigned finds that this appeal is not only without merit, but is also frivolous. At the hearing held on February 2, 2010, in

Docket Nos. 09-1980, 09-1984 and 09-1985[ 4 ], Judge Hanna cautioned Bell that she could be subject to sanctions pursuant to Fed.R.Civ.P. Rule 11 for filing frivolous pleadings. Despite this warning, Bell has continued to file frivolous, burdensome, and vexatious pleadings with this Court.

. . . .

Here, Bell has filed at least four other actions in this Court which were found to be groundless. Now, Bell has appealed an issue decided by the Bankruptcy Court in 2002, which she clearly could have brought in one of these previous filings. Additionally, it was Bell, herself who filed and signed the pleadings asserting that the trust at issue was a business trust. In this appeal, she takes a position entirely contrary to he[r] own original assertions.

In its most recent ruling, the Bankruptcy Court found that . . . its June 2002 ruling that the debtor was a business trust was dispositive of Bell's new argument that it was in fact a spendthrift trust. Thus, this appeal was taken in the face of the clear, unambiguous, dispositive holding of the Bankruptcy Court and is patently frivolous. *Capps,* 782 F.2d at 1343. *See also Corpus Christi Taxpayer's Ass'n v. City of Corpus Christi, Tex.,* 858 F.2d 973, 974 (5th Cir.1988).

The undersigned spent a significant amount of time parsing through the morass of Bell's voluminous, rambling, and unintelligible pleadings, which proved to be a substantial waste of time and resources. They contain a "hodgepodge of unsupported assertions, irrelevant platitudes, and legalistic gibberish." *Crain v. C.I.*R., 737 F.2d 1417, 1418 (5th Cir.1984). . . .

. . . .

Nevertheless, Bell has had multiple bites at the apple, none of which proved fruitful, and her latest attempt likewise lacks merit. In light of the copious, frivolous, burdensome, and vexatious pleadings

---

[4] With respect to these docket numbers, the magistrate judge explained:

On November 30, 2009, even though the automatic bankruptcy stay was in place, Bell filed a 219-page complaint with exhibits in this Court against the bankruptcy trustee and the law firm and attorneys representing the Trust alleging RICO violations. Docket No. 09-1980. On the same date, she filed another 155-page complaint with exhibits alleging RICO violations against these same defendants. Docket No. 09-1984. In addition, she filed a 239-page complaint with exhibits alleging "libel, slander, defamation, fraud, tort crimes" against the same law firm and attorneys, as well as six individual defendants. Docket No. 09-1985. Following a hearing before Magistrate Judge Hanna, all of these complaints were voluntarily dismissed by Bell on February 5, 2010.

*Id.*

Bell has filed with this Court, the undersigned recommends the Court instruct Bell to refrain from instituting any further actions against the Defendant herein or its counsel or the bankruptcy judges based on any matters set forth in her Appeal at bar lest she be ordered to appear and show cause why she should not be held in contempt of court.

*Id.* at pp. 5-6.

On October 11, 2013, the federal district judge adopted the magistrate judge's Report and Recommendation and further ordered Ms. Bell "to refrain from instituting any further actions against the Defendant herein or its counsel or the bankruptcy judges based on any matters set forth in her Appeal at bar lest she be ordered to appear and show cause why she should not be held in contempt of court." *Bell v. Bell Family Trust,* 6:13-CV-00639, p. 1 (W.D.La. Oct. 11, 2013), 2013 WL 9805803.

The federal district court's October 11, 2013 ruling was thereafter affirmed by the U.S. Court of Appeals, Fifth Circuit on July 8, 2014. *In re Bell Family Trust*, 575 Fed.Appx. 229 (5th Cir. 2014). Therein, the court warned Ms. Bell that "any further frivolous or abusive filings in this Court, the district court, or the bankruptcy court will invite the imposition of sanctions, including dismissal, monetary sanctions, and/or restrictions on her ability to file pleadings in this Court and any court subject to this Court's jurisdiction." *Id.* at 233.

On December 8, 2014, the Supreme Court of the United States issued a ruling denying a "Motion to direct the Clerk to file a petition for writ of certiorari out of time." *Bell v. Bell Family Trust,* 547 U.S. 1046, 135 S.Ct. 722 (2014).

On July 6, 2015, Ms. Bell signed a Notice of Reinscription ("the Reinscription"), which reinscribed the original 1997 Mortgage signed by Mr. Bell in favor of Ms. Bell dated March 13, 1997. The Reinscription was recorded in the Vermilion Parish records on July 6, 2015, under entry number 2015006862-MO.

Meanwhile, in February 2017, the Trust, through its current trustee, Gregory Mier, began trying to sell the Property at issue. On September 23, 2020, the Trust entered into a purchase agreement with a potential buyer. However, a title examination revealed the 2015 Reinscription of the 1997 Mortgage as a cloud on the title of the Property, and the potential buyers ultimately withdrew from the sale.

On November 4, 2020, Mr. Mier, as Trustee on behalf of the Trust, sent a certified letter to Ms. Bell advising her that the Mortgage and Reinscription have no legal effect on the Property and requesting her to cancel those recordings. Ms. Bell received the letter and responded in writing.

Following Ms. Bell's failure to cancel the Mortgage and Reinscription within thirty days of the Trust's certified letter, the Trust filed a Petition for Cancellation of Mortgage on December 8, 2020, in Louisiana district court. The petition sought to cancel the Mortgage and Reinscription, as well as assess costs and attorney fees against Ms. Bell in accordance with La.R.S. 9:5176. Ms. Bell, appearing *pro se,* then filed an answer on December 28, 2020.[5]

On January 13, 2021, the Trust filed a Motion for Summary Judgment seeking cancellation of the Mortgage and Reinscription, given the undisputed material facts, including the 1996 Act of Donation transferring the Property to the Trust and the 2005 bankruptcy court judgments. In support thereof, the Trust

---

[5] We note that Ms. Bell's answer, as well as other pleadings she filed in the state court action, and her appellate brief, do not fall far from "the voluminous, rambling, and unintelligible pleadings" filed in the federal court proceedings over which federal court judges expressed concern. *See Bell v. Bell Family Trust,* 6:13-CV-00639, p. 1 (W.D.La. Sept. 16, 2013), 2013 WL 9805802. We further note that while Ms. Bell's answer, which contains a "hodgepodge of unsupported assertions, irrelevant platitudes, and legalistic gibberish," *Id.,* also provides several unintelligible paragraphs labeled as "counterclaims", it does not appear from the record that any incidental demands have been served or otherwise properly joined to this action. *See* La.Code Civ.P. arts. 1032, 1063 and 1314; *See also, Oscar Daste and Sons, Inc. v. Dobard*, 516 So.2d 1331 (La.App. 1 Cir. 1987). The only issue properly before this court is the Trust's Motion for Summary Judgement that sought to cancel the Mortgage and Reinscription.

submitted as exhibits certified copies of the 1996 Trust Instrument and Acts of Donation, the 1997 Mortgage, the 2001 Dation, the 2005 rulings and judgments from the bankruptcy court and federal district court, the 2013 and 2014 rulings from the federal district court and U.S. fifth circuit court of appeals concerning Ms. Bell's attempt to reopen the bankruptcy proceedings, the 2015 Reinscription, the buy/sell agreement between the Trust and potential buyers, the Affidavit of Donald Bazer, who completed a title examination of the Property, and the Affidavit of Mr. Mier.

In response, Ms. Bell filed a "Motion and Memorandum to Dismiss Sham Motion for Summary Judgment as 'Purportedly' Filed by the Bell Family Trust," which was considered as an opposition to the Trust's Motion for Summary Judgment. Ms. Bell's "Motion" contains pages of largely unintelligible arguments that attempt to attack validity of the underlying bankruptcy judgments at issue. Ms. Bell suggests in her "Motion" that the bankruptcy court wrongfully transferred the Property at issue to the Trust. She further takes issue with the fact that the Motion for Summary Judgment was filed despite her request for a jury trial. In her conclusion, she argues that summary judgment is impermissible because the motion:

> is alleged to have been drafted by [Jeffrey] Ackermann[6] who is not an attorney of record in this case. This Motion for Summary Judgment is 'not' based in facts, instead relies on a judgment drafted by Ackermann which is a fraudulent violation of the Bankruptcy Courts Rulings and Reasons for Decision.

---

[6] Mr. Jeffery Ackerman was counsel for the bankruptcy trustee in connection with the federal bankruptcy proceedings discussed herein.

In support of her "Motion," Ms. Bell attached various documents including what appear to be excerpts from the bankruptcy court and federal court records but the context of those excerpts is otherwise unidentifiable.

A hearing on the Trust's Motion for Summary Judgment was held on March 22, 2021. After hearing argument, including Ms. Bell's argument concerning alleged "fraud" by attorney Ackermann in obtaining the bankruptcy court judgments, the Louisiana district court judge granted the Trust's motion. The judge further repeatedly explained to Ms. Bell the impropriety of her attempts to invalidate a bankruptcy court judgment in connection with the proceedings before him, stating:

> I saw everything you sent, but it's not enough. It's not enough to - - in my mind, it's clear that the Motion for Summary Judgment is proper. The allegations you allege are not in this court. You talk about fraud. Fraud is when the court is in the matter in which is before the Court. That's not what's before [this] Court, the fraud that you allege in a bankruptcy judgment and those things.
>
> . . . .
>
> Ms. Bell, I'm not going to let you go - - I let you talk for a while. I read all the stuff you sent. And you don't understand what I'm saying, obviously. All those allegations you make are from a bankruptcy proceeding. They have nothing to do with what I have to do.

On March 22, 2021, the Louisiana district court judge signed a judgment granting the Trust's motion, directing the clerk of court to cancel the 1997 Mortgage and 2015 Reinscription, and awarding the Trust with costs and attorney fees.

Ms. Bell appeals and appears before this court *pro se*. She has also submitted a "Motion to Strike" with this court.

11

# ANALYSIS

Motion to Strike

We fill first address Ms. Bell's "Motion to Strike," wherein she seeks to strike from the record:

> [a]ll documents which are irrelevant to the civil suit filed by appellee . . . including but not limited to:
>
> > The Realtor documents regarding the potential sale
> > The Bankruptcy Court Judgment evidence as in noncompliance
> > The Dation En Paiment;
> > "Unofficial" marked documents.

At the hearing on the Trust's motion, the Louisiana district court accepted into evidence all exhibits attached to the Trust's Motion for Summary Judgment, as well as Ms. Bell's "Motion" in opposition. Ms. Bell did not raise any objection during the hearing concerning the admission of these documents into evidence.

"The general rule is that a rule of evidence not invoked is waived, and, hence, a failure to object to evidence waives the objection to its admissibility." *Ratcliff v. Normand*, 01-1658, pp. 6-7 (La.App. 3 Cir. 6/5/02), 819 So.2d 434, 439. "To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony, and state the reasons for the objection.*" LaHaye v. Allstate Ins. Co.*, 570 So.2d 460, 466 (La.App. 3 Cir.1990), *writ denied*, 575 So.2d 391 (La.1991) (citing *Pitts v. Bailes*, 551 So.2d 1363 (La.App. 3 Cir.), *writs denied*, 553 So.2d 860 (La.1989), 556 So.2d 1262 (La.1990)). Similarly, La.Code Civ.P. art. 966(D)(2) requires that "[a]ny objection to a document [filed in support of or in opposition to a motion for summary judgment] shall be raised in a timely filed opposition or reply memorandum."

12

Therefore, because Ms. Bell did not raise any evidentiary objections with the Louisiana district court during the hearing or otherwise, it is improper for us to consider Ms. Bell's evidentiary objections raised for the first time on appeal. Her Motion to Strike is hereby denied.

<u>On the Merits:</u>

While Ms. Bell's appellant brief filed herein is rambling, difficult to follow, and fails to identify specific assignments of error as required by the Uniform Rules—Courts of Appeal, we will nevertheless address the following arguments, which we were able to extract from her briefing: (1) the Trust proceeded with the Motion for Summary Judgment despite Ms. Bell's request for a jury trial; (2) the Motion for Summary Judgment was improperly drafted by attorney Ackermann rather than by Mr. Mier, who signed the pleading; and (3) the summary judgment is based upon a fraudulent bankruptcy court judgment rather than facts.

We first note that, under the Louisiana Code of Civil Procedure, a jury trial demand does not preclude a party from submitting a motion for summary judgment. Therefore, we reject Ms. Bell's argument to this extent. Rather, "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, . . . [and] [t]he procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). "A party may move for a summary judgment for all or part of the relief for which he has prayed. A plaintiff's motion may be filed at any time after the answer has been filed." La.Code Civ.P. art. 966(A)(1). The Trust's motion for summary judgment was filed following the submission of Ms. Bell's answer and was properly considered by the Louisiana district court.

13

We further find no support for Ms. Bell's argument that the Louisiana district court erred in granting the Trust's motion because the motion, although signed by Mr. Mier, was actually drafted by attorney Ackermann. There is no evidence in the record establishing that Mr. Ackermann drafted the motion at issue, and we further fail to see how this argument is relevant to the merits of the summary judgment before us.

With respect to the merits, we review summary judgments rendered by a district court in accordance with the following:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 2006-363, p. 3 (La. 11/29/06), 950 So.2d 544, 546, see La. C.C.P. art. 966. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 2006-1181, p. 17 (La. 3/9/07), 951 So.2d 1058, 1070; *King v. Parish National Bank*, 2004-0337, p. 7 (La. 10/19/04), 885 So.2d 540, 545; *Jones v. Estate of Santiago,* 2003-1424, p. 5 (La. 4/14/04), 870 So.2d 1002, 1006.

*Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote omitted).

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The

burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

Louisiana Revised Statutes 9:5176, which is at issue here, provides a process by which a property owner can seek and obtain the cancellation of a recorded instrument that is no longer effective against his property. This statute states:

> A. Within thirty days after receipt of a written request from the owner of an immovable to do so, the following persons shall deliver to the owner a written instrument, in proper form, acknowledging that the rights of that person are extinguished:
>
> . . . .
>
> (2) A person who had an option, right of first refusal, or other contractual or legal right to acquire an immovable, a right in or over it, or the lease of an immovable and whose rights have become extinguished by virtue of the expiration of their term, the failure to exercise them timely, or the happening of a condition or other occurrence.
>
> B. If the person required to deliver an acknowledgment fails or refuses to do so, . . . the owner of the immovable may bring an action to declare that the rights are extinguished or ineffective and to direct the recorder to record in his records the judgment so rendered.
>
> . . . .
>
> D. In an action pursuant to this Section, the court may order the losing party or parties to pay the costs of the action and reasonable attorney fees incurred by the prevailing party or parties.

The undisputed material facts before us establish that the Trust is the owner of the Property subject to the Mortgage and Reinscription, and therefore it is entitled to seek cancellation of those recorded documents as contemplated by La.R.S. 9:5176. Specifically, both the August 1, 2005 and November 9, 2005 bankruptcy court judgments recognize the Trust as the owner and title holder of the Property.

15

While the 2005 bankruptcy court judgments are final judgments that are no longer appealable, Ms. Bell, in defense of the Trust's Motion for Summary Judgment, nevertheless asked the Louisiana state district court to find those judgments invalid because they were allegedly obtained by fraudulent means. She now asks this court to do the same. However, as explained by the Louisiana district court, Ms. Bell has no valid legal grounds upon which to attack the validity of the bankruptcy court's judgments in connection with the Trust's motion for summary judgment that is currently pending before us.

We first note that under 28 U.S.C. §1334, federal district courts have "original and **exclusive** jurisdiction" of all cases under title 11 of the United States Code, which is the Bankruptcy Code (emphasis added). While federal district courts are permitted to refer those cases to federal bankruptcy judges for their districts in accordance with 28 U.S.C. §157, Louisiana state courts have no jurisdiction over cases arising under the Bankruptcy Code.

Moreover, under concepts of *res judicata,* generally, "a valid and final judgment is conclusive between the same parties. . . . in any subsequent action with respect to any issue actually litigated and determined if its determination was essential to the that judgment." La.R.S. 13:4231. Therefore, the 2005 bankruptcy judgments involving both Ms. Bell and the Trust are dispositive with respect to the Trust's ownership of the Property and other issues adjudicated therein.

Finally, Louisiana law does not authorize Ms. Bell to collaterally attack the bankruptcy court's judgments as a defense to the Trust's motion for summary judgment.

> A collateral attack is defined as an attempt to impeach a decree in a proceeding not instituted for the express purpose of annulling it. As the Supreme Court stated in *Allen v. Commercial Nat. Bank*, [243

La. 840, 147 So.2d 865, 868 (1962),] "[n]o principle of law has received greater and more frequent sanction, or is more deeply imbedded in our jurisprudence, than that which forbids a collateral attack on a judgment or order of a competent tribunal, not void on its face ab initio." With this in mind, in *Price v. Price*, [326 So.2d 545, 548 (La.App. 3 Cir.1976),] we stated that "[a] judgment rendered by a Court of competent jurisdiction imparts absolute verity and has the force of things adjudged, unless and until it is set aside in a direct action of nullity. It cannot be collaterally attacked."

*Edwards v. Edwards,* p. 5 (La.App. 3 Cir. 12/22/99), 755 So.2d 331, 334-35 (footnotes omitted).

Therefore, we reject Ms. Bell's suggestion that the summary judgment should be reversed because the underlying bankruptcy judgments upon which it was rendered are invalid.

Next, we find that, under the undisputed material facts in the record, the 1997 Mortgage is not effective against the Property, and it was not effective against the Property at the time of its 2005 Reinscription; therefore, cancellation of both the Mortgage and the Reinscription was proper.

First, as noted by the Trust, Mr. Bell had no right to encumber the Property with the Mortgage in 1997, because he did not own or otherwise have the power to alienate the Property at the time. *See,* La.Civ.Code art. 3290. Rather, pursuant to a written Act of Donation dated October of 1996, Mr. Bell donated the Property to the Trust, and Ms. Bell, as trustee of the Trust at the time, accepted the donation on behalf of the Trust. The Act of Donation was signed by Mr. Bell as the donor, Ms. Bell on behalf of the donee (the Trust), two witnesses, and a notary.

The 1996 Act of Donation is a donation inter vivos as contemplated by La.Civ.Code art. 1468. Further, the donation is in proper form as it was made by an authentic act. La.Civ.Code art. 1541. Because it is in authentic form, it is

17

presumed to be valid. *Moore v. Burns,* 03-1199 (La.App. 3 Cir. 3/3/04), 867 So.2d 142, *writ denied,* 04-874 (La. 5/14/04), 872 So.2d 522.

Ms. Bell, however, seems to suggest in her appellant brief that the Act of Donation should be deemed invalid because Mr. Bell was allegedly not able to donate the property due to ongoing criminal proceedings pending against him at the time, which "included an effort by the government to provoke a forfeiture of" the Property. *In re Bell Family Trust,* 350 B.R. at 702. In so arguing, Ms. Bell points to purported testimony from Mr. Bell in an unidentified federal court proceeding stating he could not donate the property. Even assuming this is valid evidence for purposes of opposing a summary judgment, generally "[t]estimonial or other evidence may not be admitted to negate or vary the contents of an authentic act[.]" La.Civ.Code art. 1848.[7] Therefore, we find the Act of Donation to be valid.

Further, the Act of Donation, which transfers the Property from Mr. Bell to the Trust, was effective as between Mr. Bell and the Trust when Ms. Bell accepted the donation on behalf of the Trust via her signature on the Act of the Donation. *See* La.Civ.Code arts. 1544 and 1551. "When the donation is effective, the ownership or other real right in the thing given is transferred to the donee." La.Civ.Code art. 1551. Therefore, ownership of the Property was transferred to the Trust when Ms. Bell signed the Act of Donation on behalf of the Trust. Since Mr. Bell transferred the Property to the Trust via Ms. Bell as the trustee, he did not have authority to encumber the Property with a mortgage in favor of Ms. Bell.

---

[7] While "in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement[,]" Ms. Bell has not made any such allegations herein. *Id.*

18

Therefore, under the circumstances of this case, the Mortgage cannot be said to have ever been valid or effective as to the Property, and its cancellation was proper under La.R.S. 9:5176. Ms. Bell cannot take the position that she was not aware that Mr. Bell did not own the Property at the time he signed the Mortgage in favor of Ms. Bell, given that she signed the Act of Donation accepting the Property on behalf of the Trust.

In addition, even assuming the Mortgage was otherwise effective against the Property when it was initially signed in 1997, Louisiana law provides the following grounds upon which an otherwise effective mortgage becomes extinguished and no longer effective against the property it encumbers:

(1) By the extinction or destruction of the thing mortgaged.

(2) By confusion as a result of the obligee's acquiring ownership of the thing mortgaged.

(3) By prescription of all the obligations that the mortgage secures[8].

(4) By discharge through execution or other judicial proceeding in accordance with the law.

(5) By consent of the mortgagee.

(6) By termination of the mortgage in the manner provided by Paragraph D of Article 3298.

(7) When all the obligations, present and future, for which the mortgage is established have been incurred and extinguished.

La.Civ.Code art. 3319.

---

[8] We note that, in accordance with La.Civ.Code art. 3498, "[a]ctions . . . on promissory notes . . . are subject to a liberative prescription of five years. This prescription commences to run from the day the payment is exigible." The record before us suggests that any action to recover under the promissory note has prescribed, at least as of the date of Reinscription; however, since that issue has not been presented in connection with this action, we will not consider whether or not obligation secured by the Mortgage had prescribed.

Here, any right Ms. Bell had to collect on the $40,000.00 was extinguished by the bankruptcy court's 2005 judgments, which awarded the Trust with both the $40,000.00 debt evidenced by the promissory note, as well as the Property encumbered by the Mortgage and Reinscription that purportedly secures the debt. As discussed above, the bankruptcy court's judgments are valid and final judgments, and their validity cannot be collaterally attacked in connection with an opposition to a motion for summary judgment. We fail to see how Ms. Bell had any right to reinscribe a mortgage that secures a debt that was not owed to her, even if the mortgage was originally valid and effective against the Property.

In addition, even assuming the Mortgage was initially effective as to the Property, it was extinguished by confusion under La.Civ.Code art. 3319(2) following the bankruptcy court's 2005 judgments recognizing the Trust as the obligee of the debt and owner of the Property encumbered by the mortgage securing the debt.

Therefore, under La.R.S. 9:5176, the Trust, as owner of the Property at issue, had a right to seek cancellation of the Mortgage and Reinscription, as the Mortgage was extinguished and not effective against the Property.

We further find that the Trust's instant civil action seeking the cancellation of the Mortgage and Reinscription was permissible under La.R.S. 9:5176. In accordance therewith, prior to filing the civil action, the Trust submitted written correspondence via certified mail to Ms. Bell, requesting she cancel the Mortgage and Reinscription; however, after receipt of the correspondence, Ms. Bell failed to do so. Therefore, the Trust filed the instant action under La.R.S. 9:5176(3) and was properly awarded with costs and attorney fees under La.R.S. 9:5176(D).

Therefore, we find that the undisputed material facts, including the final judgments of the bankruptcy court, support the Louisiana district court's summary judgment herein cancelling the Mortgage and Reinscription, and we affirm the judgment.

We further reject Ms. Bell's requests in her brief to this court to consider or otherwise rule on her purported "counterclaims," as the only issue pending before this court is a review of the summary judgment rendered in favor of the Trust.

<u>**DECREE**</u>

For the reasons set forth herein, we deny Ms. Bell's Motion to Strike, and we affirm the Louisiana district court's summary judgment rendered in this matter. Costs of this appeal are assessed to Ms. Bell.

**MOTION TO STRIKE DENIED; AFFIRMED.**